LA RESPETABLE LOGIA "CABALLEROS DEL SUR", NÚM. 11258, Plaintiff and Appellee, *v.* ALFONSO FELICIANO, substituted by MANUEL CORDERO ZAVALA, Defendant and Appellant.

No. 10543.   Argued May 1, 1952.—Decided March 4, 1953.

*Erasto Arjona Siaca* for appellant.   *Rafael Hernández Matos* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

This is an appeal from a judgment of the former district court of Ponce in favor of the plaintiff in an action for denial of servitudes of right of way and of light and view. The controversy involves two contiguous properties located on one of the principal paved public streets of Ponce. The plaintiff's property consists of 300 square meters with a two-story house fronting on the south for 10 meters and is known as No. 12 Arenas St. The defendant's property consists of 217 square meters with a two-story house also fronting on the south for 7.262 meters and is known as No. 14 Arenas St. Between the two houses there is a strip of land which is approximately two meters wide and which is part of the plaintiff's lot known as 12 Arenas St. We are required to determine in this case if a right of way across the said two-meter strip exists in favor of the property located at 14 Arenas St.

■■ A brief history of both properties and the uses to which they have been put will be helpful in disposing of the case. However, we shall state only those facts which are necessary for decision of the point before us. At two stages of their history—prior to 1914 and between 1939 and 1945 —both properties were owned by the same person. In 1914 Julio Limardo and his wife, who owned both properties at the time, made a gift of No. 12 Arenas St. to their daughter and her husband, Bernardo Segura, which was inscribed as an independent property in the Registry in their name. In 1939 the daughter and her husband sold No. 12 Arenas St. to Narciso Barquet. In the same year the other property, No. 14 Arenas St., was likewise sold to Barquet by the heirs of Julio Limardo and his wife. Barquet retained title to both properties until 1945, when he sold No. 12 to the plaintiff. In 1946 Barquet sold No. 14 to Alfonso Feliciano.

After the present law suit was filed and while it was pending, the defendant, with notice of the suit, purchased No. 14 from Feliciano.

We turn to the problem raised by the use by occupants of No. 14, at various stages of the history of the properties, of the two-meter strip which is part of the No. 12 property. Both houses have always had front doors for entrance and exit to Arenas St. However, during the period the Seguras owned No. 12, lessees of quarters in the patio and on the second floor of No. 14 sometimes used, for ingress to and egress from No. 14, the two-meter strip which was a part of No. 12, when it was inconvenient for them to use the front door of No. 14. During that time there was no fence, gate or wall impeding such use. This use of the No. 12 strip by occupants of No. 14 was tolerated by the owners of No. 12, as some of the occupants of both houses for many years were members of the same family.

During the period of his ownership of No. 12, Segura persuaded his father-in-law, Limardo, to let him build a three-sided makeshift enclosure on No. 14 which he used as a garage for No. 12. This "garage" consisted of horizontal boards put up at random with gaps between the various boards. The columns of the "garage" extended to the boundary line of the two properties. This made it even more convenient for occupants of the second floor of No. 14, who used an outside stair in the patio of No. 14 to reach their quarters, to utilize the two-meter strip on No. 12 for entrance and exit to the street, and they continued on occasion to do so.

It remains only to note that after Barquet sold No. 14 to Feliciano in 1946, the latter tore down the ramshackle "garage", replacing it with a permanent room with a separate entrance to Arenas St. Feliciano also put two windows in this room, locating them in the new wall of cement blocks which he built on the boundary of the two properties.

The principal question to be determined here is whether under the facts of this case a servitude of right of way exists

over the two-meter strip of land which is a part of No. 12 in favor of the No. 14 property. As no such servitude is found in the recorded deeds, the burden is on the defendant to prove its existence.[1] In view of the previous common ownership of both properties, the defendant relies on § 477, Civil Code, 1930 ed.[2] But for a servitude to exist under § 477 it must be apparent. And § 468 of the Civil Code provides that "Apparent servitudes are those which are indicated and which are continually in sight by external signs, which reveal the use and benefit of the same." There must be some physical manifestations of the servitude, such as a graded, asphalt or cement path, a clearly defined road, or some other visible signs thereof. See *Toa Sugar Company v. Galán et al.*, 28 P.R.R. 791; *Torres et al. v. Plazuela Sugar Co.*, 24 P.R.R. 451; *Portela v. Societé Anonyme des Sucreries de St. Jean*, 29 P.R.R.864; Scaevola, 5th ed., pp. 309, 430; 4 Manresa, 6th ed., pp. 643–44, 684; 3 Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés* 751. And the signs "must be permanent, not variable nor accidental." *González v. Fernández*, 49 P.R.R. 28, 30. See *Rodríguez v. Suárez*, 71 P.R.R. 681.

The lower court found as a fact " . . . that no apparent sign of servitude of any sort between both the above-described urban properties established by the owner of both has ever existed." The record contains ample evidence supporting this conclusion. Prior to the sale of No. 12 in 1945 by Barquet to the plaintiff, or at any other time until the controversy arose, there was no physical sign on the

---

[1] *González v. Hawayek*, 71 P.R.R. 493; *Delgado v. Rodríguez*, 71 P.R.R. 415; *Balzac v. Torres*, 68 P.R.R. 908; *Ramos v. Viejo*, 66 P.R.R. 607; *Rosado v. Municipality*, 59 P.R.R. 736.

[2] Section 477 reads as follows: "The existence of any apparent sign of servitude between two tenements established by the owner of both of them, shall be considered, if one of them be alienated, as a title, in order that the servitudes may continue actively and passively, unless, at the time of the division of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument."

two-meter strip that it was subject to a servitude for the remainder of the two properties which were jointly owned by Barquet until the sale of No. 12 to the plaintiff. For example, there was no gravel on the two-meter strip or any other physical sign to indicate the alleged servitude. On the contrary, it has always been just an open, unmarked earthen strip which to the ordinary observer seems merely to be a part of the No. 12 tract. It is true that for a number of years the said two-meter strip was sometimes used for the convenience of members of the same family and their tenants to get into and out of No. 14 Arenas St. It is also true that thereafter the entrance to the patio of No. 14 was blocked by the makeshift "garage", making it even more convenient to cross the two-meter strip rather than to go through the front door of No. 14 in order to reach the rented quarters on the second floor of No. 14 and other parts thereof. But these facts do not constitute proof of either a visible sign of a servitude of right of way or of its permanency under the above-cited authorities. We therefore cannot agree with the defendant that the two-meter strip which is a part of No. 12 Arenas St. is subject to a servitude of right of way in favor of the property located at No. 14 Arenas St. pursuant to § 477 of the Civil Code.

We reach the same result with reference to the alleged servitude of light and view. The makeshift "garage" built by Segura on No. 14 right up to the boundary line of the properties had open spaces between the strips of lumber making up the side and there were pieces of chicken wire at the top to let in air. It was therefore possible to view No. 12 therefrom. See § 517 of the Civil Code. But these gaps in the lumber cannot be considered as the appropriate signs of a servitude. In addition to being permanent, such a servitude must also be "adequate, appropriate, not equivocal or doubtful." 4 Manresa, 6th ed., 644. The said haphazard pieces of lumber and chicken wire do not meet this test. The windows which Feliciano put in the new wall

after 1946 would come within this category; but since they were built *after* Barquet had sold No. 12 to the plaintiff and No. 14 to Feliciano, their existence of course cannot be the basis for a servitude of light and view under § 477 of the Civil Code. As there is no other possible basis for a servitude of light and view, see *Ríos* v. *Mercado*, 73 P.R.R. 784, the trial court likewise did not err in declaring that it did not exist.

The judgment of the former district court will be affirmed.